**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **BODUM USA, INC.,** <br> a Delaware Corporation, <br><br> Plaintiff, <br> v. <br><br> **LA CAFETIÈRE, INC.**, <br> an Illinois corporation, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | <br><br><br> Case No. 07 CV 06302 <br><br> Judge Matthew Kennelly <br><br> **JURY DEMANDED** |

**La CAFETIÈRE, INC.'S BRIEF IN SUPPORT OF ITS
<u>MOTION FOR ATTORNEYS' FEES</u>**

**TABLE OF CONTENTS**

                                                                                                                                                           **PAGE**

I.     INTRODUCTION ....................................................................................................... 1

II.    BACKGROUND .......................................................................................................... 3

III.   APPLICABLE LAW ................................................................................................... 5

         A.     Attorneys' Fees Pursuant to 15 U.S.C. § 1117(a) ....................................................... 5

         B.     Sanctions Pursuant to 28 U.S.C. § 1927, Rule 11, and this Court's Inherent Power ................................................................................................. 6

IV.   ARGUMENT ............................................................................................................... 7

         A.     The Sanctions Sought by La Cafetière Are Appropriate Under 35 U.S.C. § 1117(a). ..................................................................................... 7

         B.     The Sanctions Sought by La Cafetière Are Appropriate Sanctions Pursuant to Rule 11, 28 U.S.C. § 1927, and this Court's Inherent Power. .................................................................................................. 11

         C.     La Cafetière Also Seeks Its Taxable Costs. ............................................. 12

V.     CONCLUSION .......................................................................................................... 12

# **TABLE OF AUTHORITIES**

**CASES** PAGE

*Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc.*,
 781 F.2d 604 (7th Cir. 1986) ..........................................................................................6

*Chambers v. NASCO, Inc.*,
 501 U.S. 32 (1991) ........................................................................................................11

*Chwarzynski v. Tebbens*,
 No. 07 C 2102, 2008 WL 4210661 (N.D. Ill. Sept. 10, 2008) ......................................6

*Cuna Mut. Ins. Soc. v. Office and Prof'l Employees Int'l Union, Local 39*,
 443 F.3d 556 (7th Cir. 2006) ..........................................................................................7

*Dal Pozzo v. Basic Mach. Co., Inc.*,
 463 F.3d 609 (7th Cir. 2006) ..........................................................................................7

*Door Sys., Inc. v. Pro-Line Door Sys., Inc.*,
 126 F.3d 1028 (7th Cir. 1997) ....................................................................................5, 6

*Finance Inv. Co. (Bermuda) Ltd. v. Geberit AG*,
 165 F.3d 526 (7th Cir. 1998) ..............................................................................5, 10, 11

*Fuller v. Heintz/Candee*,
 No. 07-cv-305-bbc, 2008 WL 5423199 (W.D. Wis. Dec. 30, 2008) ............................8

*Fuller v. Heintz/Candee*,
 No. 07-cv-305-bbc, 2008 WL 4821653 (W.D. Wis. Nov. 4, 2008) ..............................8

*Johnson v. Cherry*,
 422 F.3d 540 (7th Cir. 2005) ..........................................................................................7

*Jolly Group v. Medline Indus., Inc*,
 435 F.3d 717 (7th Cir. 2006) ..........................................................................................6

*Kapco Mfg. Co., Inc. v. C & O Enters., Inc.*,
 886 F.2d 1485 (7th Cir. 1989) .....................................................................................6, 7

*Kotsilieris v. Chalmers*,
 966 F.2d 1181 (7th Cir. 1992) ........................................................................................6

*L.E.A. Dynatech, Inc. v. Allina*,
 49 F.3d 1527 (Fed. Cir. 1995) .................................................................................11, 12

*Republic Tobacco Co. v. N. Atl. Trading Co.*,
    481 F.3d 442 (7th Cir. 2007) ..................................................................................................12

*Sanderson v. Spectrum Labs, Inc.*,
    No. 00-1872, 2000 WL 1909678 (7th Cir. Ind. Dec. 29, 2000) ................................................9

*TE-TA-MA Truth Foundation-Family of URI, Inc. v. World Church of the Creator*,
    392 F.3d 248 (7th Cir. 2004) ....................................................................................................5

*Top Tobacco, L.P. v. N. Atl. Operating Co., Inc.*,
    No. 06 C 950, 2007 WL 1149220 (N.D. Ill. Apr. 17, 2007).....................................................2

*U.S. Bank Nat'l Ass'n, N.D. v. Sullivan-Moore*,
    406 F.3d 465 (7th Cir. 2005) ....................................................................................................6

*United Stars Industries, Inc. v. Plastech Engineered Products., Inc.*,
    525 F.3d 605 (7th Cir. 2008) ....................................................................................................7

*Vito & Nick's, Inc. v. Barraco*,
    No. 05 C 2764, 2008 WL 4594347 (N.D. Ill. Oct. 10, 2008)..................................................12

**STATUTES**

15 U.S.C. § 1117(a) ..............................................................................................1, 2, 5, 7, 12

15 U.S.C. § 1125(a) ..................................................................................................................3

28 U.S.C. § 1920..................................................................................................................2, 12

28 U.S.C. § 1927.............................................................................................1, 2, 6, 7, 11, 12

Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/1 et seq.....................................4

**OTHER AUTHORITIES**

Fed. R. Civ. P. 54..............................................................................................................1, 2, 12

Fed. R. Civ. P. 11.............................................................................................1, 2, 6, 7, 11, 12

H.R. Rep. No. 524, 93d Cong., 1st Sess. 2 (1973)........................................................................6

Local Rule 54.1...........................................................................................................................12

Local Rule 54.3......................................................................................................................2, 12

La Cafetière, Inc. ("La Cafetière") respectfully submits this Brief in support of its Motion for attorneys' fees and related non-taxable expenses pursuant to 15 U.S.C. § 1117(a) and Rule 54 of the Federal Rules of Civil Procedure and for sanctions pursuant to 28 U.S.C. § 1927, Rule 11, Fed. R. Civ. P., and the inherent power of the Court.

**I.      INTRODUCTION**

During the course of this litigation, La Cafetière was forced to expend tremendous time, effort, and expense to defend its unquestionable right to sell its French-press coffeemakers in the United States.  On March 24, 2009, this Court affirmed La Cafetière's rights by granting La Cafetière's Motion for Summary Judgment Based upon the Parties' 1991 Stock Purchase Agreement ("SPA Motion").[1]   (Docket Entry No. 100, Memorandum Opinion and Order granting summary judgment, 1 [hereinafter "Opinion"].)  Because La Cafetière is the prevailing party on the SPA Motion, and because Bodum pursued a frivolous case (for the second time) against La Cafetière, La Cafetière is entitled to both its costs and attorneys' fees.  This case is exceptional because Bodum's claims were without a plausible legal basis according to the plain and unambiguous language of the 1991 Stock Purchase Agreement (the "SPA"), as shown by the fact that this Court granted summary judgment in its favor.

Bodum's summary judgment position rested upon the manifestly unreasonable position that the SPA does not authorize La Cafetière to sell French-press coffeemakers in the United States.  Bodum never offered a reasonable explanation of how the plain meaning of the SPA supports its contention, and instead raised the same untenable arguments that were previously rejected by a Danish Court.  As this Court confirmed in granting summary judgment, there is

---

[1] This Court simultaneously denied La Cafetière's Motion for Summary Judgment of Laches and Equitable Estoppel ("L/E Motion") as moot.

simply no rational explanation supporting Bodum's interpretation of the SPA. For these reasons the sanctions requested herein are warranted.

Attorneys' fees in situations such as this are available under the Lanham Act, 15 U.S.C. § 1117(a), which authorizes an award of reasonable attorneys' fees to the prevailing party in "exceptional cases." *Top Tobacco, L.P. v. N. Atl. Operating Co., Inc.*, No. 06 C 950, 2007 WL 1149220, at *1 (N.D. Ill. Apr. 17, 2007). Here, the conduct of Bodum and its counsel in pressing infringement claims that could not possibly be valid based on a plain reading of the SPA is nothing short of exceptional. The fact that Bodum's strained interpretation of the SPA had previously been rejected by the Danish Court further evidences Bodum's sanctionable conduct. Moreover, Bodum's assertion of trade dress infringement in this action should be considered vexatious, especially in light of the 17 year delay that was the subject of La Cafetiere's second summary judgment motion, denied by this Court as moot.

These same facts also warrant an award of sanctions under 28 U.S.C. § 1927, Rule 11, and the Court's inherent power to grant sanctions.

Accordingly, La Cafetière respectfully requests that the Court sanction Bodum and its counsel in an amount equal to the attorneys' fees and non-taxable expenses reasonably incurred by La Cafetière in defending this litigation, in an amount to be determined if La Cafetière's Motion is granted. La Cafetière also seeks its taxable costs pursuant to and 28 U.S.C. § 1920 and Rule 54(d)(1) of the Federal Rules of Civil Procedure, also to be determined later. Finally, pursuant to Local Rule 54.3, La Cafetière requests that this Court grant La Cafetière leave to file a petition for fees and order sanctions and costs and set a schedule to determine the appropriate amount. Pursuant to Rule 54(d)(2)(B)(iii), La Cafetière provides [Redacted] as a fair estimate

of the amount sought but reserves the right to change its calculation and/or to seek additional fees and costs that have not yet been accounted for.

## II. BACKGROUND

As detailed in La Cafetière's SPA Motion, which is incorporated by reference, pursuant to a stock purchase agreement executed on August 8, 1991 (the "SPA"), Bodum Holding A/S acquired all of the outstanding stock of Martin, including that of Martin's majority stockholder, Mr. Louis-James de Viel Castel. (Docket Entry No. 37, Donoghue Decl., Ex. 4 at 1-3, Ex. 5 ¶ 2.) The SPA, executed in France, concerned the sale of a French company, and all nine of the selling stockholders were French residents. (Donoghue Decl. Ex. 4, at 1-2; Donoghue Decl. Ex. 5 at ¶ 3.) The pertinent portions of Article Four of the SPA stated as follows:

> In consideration of the compensation paid to Stockholder for the stocks of [Martin,] Stockholder guarantees, limited to the agreed compensation, see Article 2, that he shall not-for a period of four (4) years-be engaged directly or indirectly in any commercial business related to manufacturing or distributing [Martin's] products. . .
>
> Notwithstanding Article 4 [Bodum Holdings] agrees that Stockholder through Household . . . can manufacture and distribute any products similar to [Martin's] products outside of France. It is expressly understood that Household [ I is not entitled, directly or indirectly to any such activity in France, and that Household [ ] furthermore is not entitled, directly or indirectly, globally to manufacture and/or distribute coffee-pots under the trade marks and/or brand names of "Melior" and "Chambord" held by [Martin]. Stockholder agrees that Household [ ] is not entitled to use for a period of four (4) years the importers, distributors, and agents which [Martin] uses andlor has used the last year. Any violations of these obligations will constitute a breach of Stockholder's obligations according to Article 4.

(Opinion 4-5).

Bodum sued La Cafetière on November 6, 2007, asserting claims of trade dress infringement under 15 U.S.C. § 1125(a), common law unfair competition, and violation of the

Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/1 et seq. (*See generally* Docket Entry No. 1, Complaint). Bodum's second amended complaint, filed on January 7, 2008, asserted the same causes of action. (Docket Entry No. 21.)

In prior litigation that Bodum filed in Denmark, La Cafetière's Danish distributor (Jj Company ApS) was accused by Bodum of infringing Bodum's rights in the Chambord design through sales of La Cafetière coffee makers, including the La Cafetière "Classic." (Donoghue Decl. Ex. 6, at 3, 5.) On February 8, 2008, a Danish Court issued an opinion in the matter of Pi-Design AG and Peter Bodum A/S v. Jj Company ApS. (*See generally id.*) The Danish Court's February 8, 2008 Opinion denied Bodum's request for an injunction and ruled in favor of La Cafetière's distributor on the same issue presented before this Court in La Cafetière's Motion for Summary Judgment Based upon the Parties 1991 Stock Purchase Agreement. (Docket Entry No. 34.) Specifically, the Danish Court found that the SPA expressly authorized La Cafetière (and, indirectly, its Danish distributor) to sell products similar to Martin's products, including those embodying the Chambord design. (*Id.* at 7-9.)

Similarly, on March 24, 2009, this Court granted La Cafetière's SPA Motion on the same grounds. The Court's Opinion analyzed the plain language of the SPA (and in particular, Article 4), and also looked at prior drafts of the agreement, noting that "the progression of drafts and communications between the two parties reflects a gradual loosening of the geographic restrictions on Household's activities, along with a tightening of restrictions on its use of the Chambord and Melior marks." (Opinion 10.) The Opinion concludes that the subsequent July 24, 1991 draft "completely did away with the established-market restriction and instead stated that Household 'can manufacture any product similar to [Martin's] products outside of France.'" (*Id.*) The Opinion also considered contemporaneous communications, and concluded that a letter

dated July 24, 1991, from Mr. Bodum's representative and a draft of the SPA "indicate a clear intent to eliminate the restriction limiting Household to the U.K. market." (Opinion 12.) Mr. Bodum's attempt to explain his "understanding" despite the language of the agreement and contemporaneous communications were rejected, and his declaration was found to "contradict the logical progression of the contract negotiations." (Opinion 13.) This Court noted that "the common sense reading of the contract drafts and contemporaneous correspondence in this case reveal an intent to allow Household to distribute anywhere outside France." (*Id.*)

**III.  APPLICABLE LAW**

    **A.  Attorneys' Fees Pursuant to 15 U.S.C. § 1117(a)**

In "exceptional cases," courts have discretion to award attorneys' fees to prevailing parties in cases brought under the Lanham Act. 15 U.S.C. § 1117(a). Although § 1117(a) is ordinarily invoked in cases where prevailing parties have proven infringement, "it may in exceptional circumstances, and when proven by clear and convincing evidence, provide protection against unfounded suits brought by trademark owners for harassment and the like." *Finance Inv. Co. (Bermuda) Ltd. v. Geberit AG*, 165 F.3d 526, 533 (7th Cir. 1998) [hereinafter *Bermuda*] (citation omitted). The appropriate inquiry is whether the plaintiff's suit is "oppressive." *TE-TA-MA Truth Foundation-Family of URI, Inc. v. World Church of the Creator*, 392 F.3d 248, 258 (7th Cir. 2004) (citing *Door Sys., Inc. v. Pro-Line Door Sys., Inc.*, 126 F.3d 1028, 1032 (7th Cir. 1997)). A lawsuit is oppressive "if it lacked merit, had elements of an abuse of process claim, and the plaintiff's conduct unreasonably increased the cost of defending against the suit." *Id.* (citing *S Indus., Inc. v. Centra 2000, Inc.*, 249 F.3d 625, 627 (7th Cir. 2001)). A showing of bad faith is not required; instead, under Section 1117(a), "a suit can be oppressive because of lack of merit and cost of defending even though the plaintiff honestly

though mistakenly believes that he has a good case and is not trying merely to extract a settlement based on the suit's nuisance value." *Door Sys.*, 126 F.3d at 1032.[2]

### B. Sanctions Pursuant to 28 U.S.C. § 1927, Rule 11, and the Court's Inherent Power

The imposition of sanctions under Section 1927 is within the sound discretion of the court. *U.S. Bank Nat'l Ass'n, N.D. v. Sullivan-Moore*, 406 F.3d 465, 469 (7th Cir. 2005). A court has discretion to impose Section 1927 sanctions in the following instances: (1) where an attorney has "acted in an objectively unreasonable manner by engaging in serious and studied disregard for the orderly process of justice;" (2) where an attorney has "pursued a claim that is without a plausible legal or factual basis and lacking in justification;" or (3) where an attorney has "pursued a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound." *Jolly Group v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006). This imposes "a continuing duty upon attorneys to dismiss claims that are no longer viable." *Id.* (citing *Dahnke v. Teamsters Local 695*, 906 F.2d 1192, 1201 n. 6 (7th Cir. 1990)).

The purpose of 28 U.S.C. § 1927 is "to deter frivolous litigation and abusive practices by attorneys and to ensure that those who create unnecessary costs also bear them." *Chwarzynski v. Tebbens*, No. 07 C 2102, 2008 WL 4210661, at *1 (N.D. Ill. Sept. 10, 2008) (citing *Kapco Mfg. Co., Inc. v. C & O Enters., Inc.*, 886 F.2d 1485, 1491 (7th Cir. 1989) (per curiam)). Further, under both Rule 11 and Section 1927, a "court may impose a penalty as light as a censure and as heavy as is justified . . . ." *Kotsilieris v. Chalmers*, 966 F.2d 1181, 1187-88 (7th Cir. 1992) (quotation omitted). Rule 11 sanctions are also available. In this context, a court must focus on what counsel knew at the time the complaint was filed and "undertake an objective inquiry into

---

[2] "Several circuits, noting that the legislative history of the attorney's fee provision makes no distinction between registered and unregistered marks (*see, e.g.,* H.R. Rep. No. 524, 93d Cong., 1st Sess. 2 (1973)), deem the omission an oversight that they are free to repair." *Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc.*, 781 F.2d 604, 612 (7th Cir. 1986) (citing *Transgro, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1025-26 (9th Cir. 1985)).

whether the party or his counsel should have known that his position is groundless." *Cuna Mut. Ins. Soc. v. Office and Prof'l Employees Int'l Union, Local 39*, 443 F.3d 556, 560-61 (7th Cir. 2006) (citations omitted). For example, in *United Stars Industries, Inc. v. Plastech Engineered Products., Inc.*, 525 F.3d 605, 610 (7th Cir. 2008), the Seventh Circuit upheld an award against attorneys from a large law firm where the trial judge found that the firm "advanced a position that never had any evidentiary support, and thus necessarily could not have been based on a reasonable investigation preceding the counterclaim."

Moreover, the Seventh Circuit recognizes that "Rule 11 and section 1927 overlap in their prohibition of conduct which is intended to impede and multiply the proceedings, spurning any attempt to seek a resolution of meritorious claims." *Kapco Mfg. Co.*, 886 F.2d at 1491. In fact, the *United Stars* court determined on appeal that Rule 11 would have been a better foundation for the trial court's sanction than Section 1927, but noted that it would be pointless to remand so that the district judge could substitute one for the other. 525 F.3d at 610. Both Section 1927 and the inherent powers of the Court (discussed below) remain available in situations where Rule 11 technically does not apply. *Dal Pozzo v. Basic Mach. Co., Inc*., 463 F.3d 609, 614 (7th Cir. 2006). Also, from a procedural standpoint, a court may impose sanctions *sua sponte*, under Rule 11, Section 1927, or its inherent authority, so long as it gives the offending party notice of its intent to do so and the opportunity to be heard. *Johnson v. Cherry*, 422 F.3d 540, 551 (7th Cir. 2005) (citations omitted).

## IV. ARGUMENT

### A. The Sanctions Sought by La Cafetière Are Appropriate Under 35 U.S.C. § 1117(a).

This case is exceptional because Bodum's claims were without plausible legal basis according to the plain and unambiguous language of the SPA.

- 7 -

Bodum's claims lack merit based upon the plain and "not ambiguous" language (Opinion 15) of the SPA that allows La Cafetière to sell "any products similar" to those of Martin, as evinced by Bodum's lack of argument regarding that language. Indeed, in its briefing before this Court, Bodum conducted almost no analysis of the term "any products similar" to explain how that term does not encompass identical products. Bodum's only explanation of the term is as follows: "[p]aragraph 4 provided that Martin's stockholders could still manufacture and distribute products similar to—i.e., not identical to—these products . . . ." (Docket Entry No. 68, Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment Based upon the Parties 1991 Stock Purchase Agreement 4, 8-9 [hereinafter Bodum SPA Resp. Br.] 11.)

Following the Danish Court's decision, Bodum and its counsel certainly were on notice that Bodum's claims had no merit.[3] Here, Bodum asserted no legitimate evidence of the existence or enforceability of its alleged trade dress and failed to offer reasonable legal arguments not already rejected by the Danish Court to defeat La Cafetière's right to sell coffeemakers under the SPA—which would, in any event, defeat its claims even if it could establish the existence of an enforceable trade dress.[4]

By continuing to pursue its case in the U.S. Bodum forced La Cafetière to defend against essentially baseless allegations, including arguments that were previously rejected by another court. It was, therefore, improper for Bodum to assert claims based upon a trade dress that it has not begun to establish, and it is certainly "oppressive" and "exceptional" for Bodum to do so for

---

[3] Even if not exceptional at the outset, a case can become exceptional after a plaintiff's case loses its merit. *See, e.g., Fuller v. Heintz/Candee*, No. 07-cv-305-bbc, 2008 WL 5423199, at *1 (W.D. Wis. Dec. 30, 2008) (on reconsideration) (concluding that plaintiff's case "became exceptional" under Section 1117(a) after plaintiff granted a naked license invalidating the trademark asserted in the case).

[4] The fact that the merits of Bodum's alleged trade dress, including the existence of an alleged trade dress, were not reached by this Court does not preclude attorneys' fees based on the lack of merit of Bodum's trade dress claim. *Fuller v. Heintz/Candee*, No. 07-cv-305-bbc, 2008 WL 4821653, at *2 (W.D. Wis. Nov. 4, 2008) (citing *S Indus., Inc. v. Centra 2000, Inc.* 249 F.3d 625, 627 (7th Cir. 2001)) ([T]he question under § 1117(a) is not whether a case was *decided* on the merits, but rather whether it 'lacked merit.")

a second time based upon a position that, having been previously rejected, defeats its claims. *Cf. Sanderson v. Spectrum Labs, Inc.*, 248 F.3d 1159 (7th Cir. 2000) (unpublished table decision) (affirming district court's award of attorney's fees and costs because plaintiff's complaint raised the same Lanham Act claim against defendant as his first, later-voluntarily-dismissed complaint).

Bodum presented no new arguments before this Court. Bodum made the following arguments in its Brief regarding the SPA: that the applicable language of the SPA was a "restrictive covenant" or non-competition provision (Bodum SPA Resp. Br. 4, 10-11); that "one would reasonably expect that such an important right . . . would be clearly set forth (*id.* at 9); and that Bodum would not have bought Martin's "premier asset" and "sell coffee makers in the same design under a different name . . . after pocketing the 13 million Francs purchase price" (*id.* at 13). These arguments are the same as the following arguments Bodum made before the Danish Court: There, Bodum argued that "[t]he fact that, according to article 4 [of the SPA], the shareholders are entitled to stay active in the market is not the same as entitling them to sell exact copies of the plaintiffs' products;" that "if one were to assume an actual right of license to the shareholders, it should have been expressed clearly in the agreement;" and that "why should the plaintiffs pay so much money for the rights if in any event they were to allow the sellers of the rights to continue selling." (Docket Entry No. 37-6, Pi-Design AG and Peter Bodum A/S v. Jj Company ApS, 6, at LaCaf00878 [hereinafter Danish Op.].) The Danish Court rejected those arguments before meaningful discovery began in this case. (*Id.* at 8-9, at LaCaf00880-881.) Here, Bodum flatly ignored the issue of the plain and unambiguous meaning of "any products similar" and ignored the Danish Court's decision, which found in favor of La Cafetière and awarded costs for witnesses and legal assistance. (*Id.* at 9, at LaCaf00881.)

Further, as this Court noted, the testimony of Mr. Jorgen Bodum, Bodum's CEO, was wholly unsupported by the record evidence. (Opinion 10 ("With the exception of Mr. Bodum's testimony, however, the evidence does not support Bodum's position.").) Specifically, this Court noted, among other disparities, that Mr. Bodum's Declaration "contradicts the logical progression of the contract negotiations" (*id.* at 13) and that Bodum's interpretation of the types of products La Cafetière (or Household) could distribute conflicts with Bodum's argument about the geographic restrictions (*id.* at 14.) Bodum's case lacked any merit beyond what Mr. Bodum was willing to baldy assert.

Finally, this case is exceptional given La Cafetière's difficulty securing evidence in its defense here in the U.S. after 17 years. Not only has the time delay been prejudicial, but re-deciding the same issue and conducting discovery in the U.S. La Cafetière created additional problems. *See, e.g., Bermuda*, 165 F.3d at 534 (affirming trial court's award of sanctions noting that there was "no doubt" plaintiffs' prosecution of the lawsuit met the exceptional case standard in part because many documents had to be translated from German to English due to the lawsuit's international dimensions.) In fact, had La Cafetière not moved for summary judgment before the close of discovery, the potential costs in this case would have been even larger. Further, due to the passage of time, the memories of primary witnesses on both sides have understandably faded, putting the onus on La Cafetière to prove its affirmative defense under the SPA. (Docket Entry No. 91, Statement of Additional Material Facts in Support of La Cafetière, Inc.'s Motions for Summary Judgment, ¶ 10.) Moreover, the vast majority of the pertinent documents and La Cafetière's institutional knowledge has been lost or destroyed. (*See* L/E Motion 13.) Each of these inevitable results of Bodum's 17-year delay forced La Cafetière to expend significant resources and attorney time to create an evidentiary basis for its defenses.

Bodum took advantage of a separate legal forum to assert the same claims supported by previously rejected arguments and once again put La Cafetière to the expense of defending its actions against redundant accusations. It was vexatious and wasteful for Bodum to use this Court as a second chance to press La Cafetière into settlement despite losing before the Danish Court and the clear language of the SPA. La Cafetière was forced to participate in this expensive charade a second time until Bodum's accusations were finally narrowed by summary judgment briefing and until this court stayed discovery on issues unrelated to the summary judgment issues before finally disposing of Bodum's claims.

### B. The Sanctions Sought by La Cafetière Are Appropriate Sanctions Pursuant to Rule 11, 28 U.S.C. § 1927, and this Court's Inherent Power.

For the reasons given above, the conduct of Bodum's counsel in pursuing the present litigation supports an award of fees under Rule 11 and § 1927 as well. Most notably, Bodum's position clearly lacks plausible legal basis according to a plain reading of the SPA. Even further, a reasonably careful attorney would have known that Bodum's position was unsound without need for any further inquiry based on arguments that were previously rejected before the Danish Court. These facts alone make this a prototypical Rule 11 and § 1927 case. *See, e.g., Bermuda*, 165 F.3d at 533 ("[Lead Counsel's] decision to file the Indiana suit after the Florida loss was certainly an unreasonable multiplication of proceedings, and it thus fits § 1927 to a 'T.'"). Not only is Bodum's position without merit, but its 17-year delay in filing suit created significant additional costs related to the litigation. As discussed above, the proceedings were not only multiplied, but entirely duplicative of those in Demark and created an increased burden on the part of La Cafetière to support its affirmative defense based upon the SPA.

Finally, this Court's equitable power is an alternative basis for awarding attorneys' fees to La Cafetière. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991); *L.E.A. Dynatech, Inc. v.*

*Allina*, 49 F.3d 1527, 1530 (Fed. Cir. 1995). In this regard, a court may award attorneys' fees when a party has acted in "bad faith, vexatiously, wantonly or for oppressive reasons." *See L.E.A. Dynatech*, 49 F.3d at 1530.

### C. La Cafetière also Seeks Its Taxable Costs.

As the prevailing party, La Cafetière is entitled to taxable costs as a matter of course, unless the Court otherwise directs. Indeed, there is a presumption that La Cafetière is entitled to its costs. *See e.g.* Fed. R. Civ. P. 54(d)(1); 28 U.S.C. § 1920. Rule 54(d) creates a "strong presumption" that the prevailing party will recover costs, and that presumption is difficult to overcome. *Vito & Nick's, Inc. v. Barraco*, No. 05 C 2764, 2008 WL 4594347, at *2 (N.D. Ill. Oct. 10, 2008) (citing *Mother and Father v. Cassidy*, 338 F.3d 704, 708 (7th Cir. 2003); *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 945 (7th Cir. 1997)). There is no doubt that La Cafetière is the "prevailing party" in this lawsuit due to judgment being entered in its favor. (*See generally* Opinion); *see also Republic Tobacco Co. v. N. Atl. Trading Co.*, 481 F.3d 442, 446 (7th Cir. 2007) (quotation omitted). La Cafetière will calculate the amount of its taxable costs pursuant to the Court's Order and Local Rules 54.1 and 54.3, if La Cafetière's Motion is granted.

### V. CONCLUSION

For all of these reasons, La Cafetière respectfully requests that the Court grant its Motion in its entirety and (1) grant La Cafetière leave to file a petition for taxable costs pursuant to Rule 54(d)(1) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1920; (2) grant La Cafetière leave to file a petition for attorneys' fees and related non-taxable expenses pursuant to 15 U.S.C. § 1117(a) and Rule 54(d)(2); (3) award La Cafetière sanctions pursuant to 28 U.S.C. § 1927, Rule 11, and/or the inherent power of the Court; and (4) enter an Order pursuant to Local Rules 54.1 and 54.3 setting a schedule to determine the amount of the foregoing fees and costs.

- 13 -

April 7, 2009 	Respectfully Submitted,

/s/ Thomas G. Pasternak
Thomas G. Pasternak
Steven J. Reynolds
DLA Piper LLP (US)
203 N. LaSalle Street, Suite 1900
Chicago, Illinois 60601
(312) 368-4000
thomas.pasternak@dlapiper.com
steven.reynolds@dlapiper.com

*Attorneys for Defendant
La Cafetière, Inc.*